**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| LYNK MEDIA LLC,<br>31-64 21ST STREET<br>ASTORIA, NY 11106<br><br>Plaintiff,<br><br>v.<br><br>SINCLAIR, INC.; SINCLAIR BROADCAST GROUP, LLC, f/k/a SINCLAIR BROADCAST GROUP, INC.; SINCLAIR TELEVISION GROUP, INC.; and KEYE LICENSEE, LLC,<br>10706 BEAVER DAM ROAD<br>HUNT VALLEY, MD 21030<br><br>Defendants. | Case No:<br><br>JURY TRIAL DEMANDED |

SLG SANDERS · LAW GROUP ·

**COMPLAINT**

Plaintiff Lynk Media LLC ("*Plaintiff*"), by and through its undersigned counsel, for its Complaint against defendants Sinclair, Inc. ("*Sinclair*"); Sinclair Broadcast Group, LLC, f/k/a Sinclair Broadcast Group, Inc. ("*SBG*"); Sinclair Television Group, Inc. ("*STG*"); and KEYE Licensee, LLC ("*KEYE Licensee*") (collectively, "*Defendants*"), states and alleges as follows:

**INTRODUCTION**

1. This action seeks to recover damages for copyright infringement under the Copyright Act, 17 U.S.C. §101 *et seq*.

2. Oliya Fedun ("Fedun") recorded a video aboard a Delta Air Lines flight at Palm Beach International Airport as the flight crew announced a ground stop caused by a drone flying near Air Force One (the "Video"). Plaintiff owns the copyright in the Video, which is registered with the United States Copyright Office.

3. Defendants together operate one of the largest television broadcasting businesses

in the United States, including Defendants' national news program "The National Desk" and Austin, Texas television station KEYE-TV, which does business as "CBS Austin," and its website, cbsaustin.com. Defendants assert copyright in their own content, require others to obtain written permission before reproducing it, and maintain a corporate department dedicated to processing copyright complaints.

4. On March 29, 2026, the same day the Video was first published, Defendants built a National Desk story around the Video and published that story, with the Video playing within it, on cbsaustin.com and, upon information and belief, on numerous other station websites, without a license from Plaintiff.

**PARTIES**

5. Plaintiff is a New York limited liability company and maintains its principal place of business in Queens County, New York.

6. Defendant Sinclair, Inc. is a Maryland corporation with its principal place of business at 10706 Beaver Dam Road, Hunt Valley, Maryland 21030. Sinclair is a publicly traded company whose Class A common stock is listed on the NASDAQ Stock Market under the symbol SBGI.

7. Defendant Sinclair Broadcast Group, LLC is a Maryland limited liability company with its principal place of business at 10706 Beaver Dam Road, Hunt Valley, Maryland 21030. SBG's sole member is Sinclair Holdings, LLC, which is a wholly owned subsidiary of Sinclair.

8. Upon information and belief, SBG was formerly organized as Sinclair Broadcast Group, Inc., a Maryland corporation, and converted to a limited liability company in 2023 in connection with a corporate reorganization in which Sinclair became the parent holding company of SBG.

9. Upon information and belief, defendant Sinclair Television Group, Inc. is a corporation with its principal place of business at 10706 Beaver Dam Road, Hunt Valley, Maryland 21030, and is a wholly owned subsidiary of SBG.

SLG SANDERS LAW GROUP

10. Upon information and belief, defendant KEYE Licensee, LLC is a limited liability company with its principal place of business at 10706 Beaver Dam Road, Hunt Valley, Maryland 21030. KEYE Licensee is the Federal Communications Commission ("*FCC*") licensee of record for television station KEYE-TV, Austin, Texas (FCC Facility ID 33691), which does business as "CBS Austin" and whose website is located at cbsaustin.com (the "*Website*"), and is an indirect, wholly owned subsidiary of Sinclair, SBG, and STG.

11. Defendants operate as a single, integrated media enterprise under common ownership, common management, and common control from their shared headquarters in Hunt Valley, Maryland. Sinclair's Annual Report on Form 10-K for fiscal year 2025, filed jointly by Sinclair and SBG, reports that Sinclair's local television stations are owned and/or operated by STG and its direct and indirect subsidiaries, and Sinclair's public financial disclosures state that the assets of its local media segment are owned and operated by SBG.

12. The National Desk is a national news program produced by Defendants since 2021 and broadcast on more than 80 local television stations owned or operated by Defendants. Defendants distribute The National Desk's stories for simultaneous publication on their station websites, including the Website, and on thenationaldesk.com.

**JURISDICTION AND VENUE**

13. This Court has subject matter jurisdiction over the federal copyright infringement claims pursuant to 28 U.S.C. §1338(a) and 28 U.S.C. §1331.

14. This Court has personal jurisdiction over each Defendant because each Defendant maintains its principal place of business in Maryland, and because the conduct giving rise to this action was directed, supervised, and controlled from Defendants' headquarters in Hunt Valley, Maryland.

15. Venue is proper in this District under 28 U.S.C. § 1400(a) because each Defendant resides or may be found in this District, and under 28 U.S.C. § 1391(b)(1) and (b)(2) because all Defendants reside in Maryland and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTS COMMON TO ALL CLAIMS

### A. Plaintiff's Copyright Ownership

16. Fedun, widely known by her professional moniker Scootercaster, is a prominent Ukrainian-American multimedia journalist, documentary producer, and photographer. Her extensive body of work capturing high-stakes breaking news, civil unrest, and humanitarian crises has solidified her as a key figure in modern frontline journalism.

17. Born and raised in Kyiv, Ukraine, Fedun discovered her passion for media early, launching her journalism career at just 14 years old as a music and morning show host. She later expanded her education globally, studying Film Production and Psychology at Oxford Brookes University before temporarily balancing her media pursuits with a notable career in the music industry, touring internationally as the official opening DJ for rock musician Tommy Lee.

18. After settling in New York City, Fedun founded FreedomNews.TV (FNTV), an independent, frontline news-wire service designed to gather professional journalists dedicated to unfiltered, raw news gathering. Through FNTV, she has directed coverage on generation-defining domestic events, including metropolitan pandemic responses, the 2020 George Floyd uprisings, and the January 6th Capitol riots.

19. Her relentless embedded filming and direct production work have earned her distinct industry accolades, including associate producer and archival camera credits on major, critically recognized documentary features.

20. Her notable project collaborations include the political extremism exposé Against All Enemies (2023)—which earned highly competitive premiere placement at the prestigious Tribeca Film Festival—as well as the social documentary Americonned (2023), Hulu’s The 1619 Project (2023), and National Geographic's acclaimed series Trafficked with Mariana Van Zeller (2020).

21. Fedun's most prominent international acclaim stems from her fearless, deeply personal reporting during the outbreak of the war in Ukraine. In early 2022, she left her home in Queens and flew directly into Kyiv just days before the official Russian invasion to record the



SLG SANDERS · LAW GROUP ·

shifting reality of her homeland. Stranded after initial flights out were cancelled, she spent months on the frontlines of the Donbas region and in civilian training camps, providing raw video diaries and interviewing everyday citizens taking up arms. Her harrowing, essential frontline dispatches and coverage of refugee evacuations were picked up and broadcast internationally by major global news syndicates, drawing massive industry respect for her willingness to highlight difficult truths in active combat zones.

22. Plaintiff is a media licensing company that acquires and licenses newsworthy video recorded by eyewitnesses and independent creators to news organizations, media companies, and other commercial users for a fee. Plaintiff relies upon licensing revenue from those works and upon the protections afforded by United States copyright law to preserve their value.

23. Plaintiff has obtained active and valid copyright registrations from the United States Copyright Office (the "*USCO*") which cover many of Plaintiff's videos while many others are the subject of pending copyright applications.

24. On March 29, 2026, at approximately 1:12 p.m., Fedun first published the Video on her account on X (formerly Twitter), @ScooterCasterNY, together with a post reporting that a ground stop at Palm Beach International Airport had been called because a drone came too close during Air Force One's takeoff. A screengrab of the Video is attached hereto as Exhibit 1.

25. In creating the Video, Fedun personally selected the subject matter, timing, angle, perspective, and camera equipment used to capture the video recording and made each and every artistic determination necessary for the creation of the work.

26. On April 13, 2026, the Video was registered by the USCO under Registration No. PA 2-596-256. Because the Video was registered within three months after its first publication, statutory damages and attorney's fees are available for Defendants' infringement pursuant to 17 U.S.C. § 412, notwithstanding that the infringement commenced before the effective date of registration.

27. Plaintiff acquired the copyright in and to the Video, together with all accrued



SLG SANDERS LAW GROUP

causes of action, by way of a valid written transfer agreement and is the owner of all claims asserted herein.

28. Plaintiff has never licensed the Video to any Defendant.

**B. <u>Defendants' Business and the Website</u>**

29. Defendants own, operate, or provide programming and operating services to 179 television stations in 81 markets, reaching approximately 38% of United States households, generated more than $3 billion in total revenue in each of 2024 and 2025, and hold themselves out as one of the nation's largest producers of local news, producing more than 2,300 hours of news per week.

30. Defendants' local media business derives revenue primarily from the sale of advertising and from fees paid by distributors to carry Defendants' stations. Defendants also earn revenue by selling digital advertisements on third-party platforms and by delivering digital content through station websites, mobile applications, and social media. Advertising rates are driven by audience: the more viewers Defendants attract to their news brands and platforms, the more Defendants can charge advertisers.

31. Upon information and belief, the Website and Defendants' other station websites are monetized through paid advertising displayed alongside their content, including the page at issue here. The more visitors Defendants attract, the more advertising revenue Defendants earn.

32. Breaking-news video recorded by eyewitnesses in the moment is among the most valuable content a news organization can offer. Defendants used the Video to break a national story and to attract the audience, and advertising revenue, that followed.

**C. Defendants Are Sophisticated Content Creators and Licensors**

33. Defendants are not casual users of online content. Defendants are professional content creators, owners, and licensees whose business depends on the acquisition, licensing, and protection of rights in photographs, video, and other copyrighted works.

34. Defendants assert copyright in their own content. The terms and conditions governing Defendants' station websites state that the materials available on those sites are the

property of Defendants and their affiliates or licensors and are protected by copyright, trademark, and other intellectual property laws, and prohibit any reproduction or distribution of those materials without prior written permission from the owner.

35. Defendants maintain a written policy under the Digital Millennium Copyright Act, a designated agent for copyright complaints within Sinclair's Corporate Web Department, and a Legal Department to which copyright notices are directed.

36. Defendants' newsrooms are staffed by professional journalists and producers who are trained in, and held to, professional standards governing the sourcing and attribution of third-party material. In another action pending in this Court, SBG has admitted that it provides training on copyright practices, including when material should be licensed. Global Weather Productions LLC v. Sinclair Broadcast Group, LLC, No. 1:26-cv-01331-ABA (D. Md.), ECF No. 10 ¶ 24.

37. Defendants have been sued for copyright infringement before, as SBG has admitted. Id. ¶ 27. In Nicklen v. Sinclair Broadcast Group, Inc., 551 F. Supp. 3d 188 (S.D.N.Y. 2021), a federal court rejected Sinclair's contention that displaying a third-party photographer's video taken from social media was not a public display under the Copyright Act.

38. Upon information and belief, Defendants have not implemented adequate internal policies to verify copyright ownership before content use, or their internal policies are not designed to verify copyright ownership or are systematically ignored, indicating a willful, recurring disregard for copyright compliance by an enterprise of Defendants' reach, capabilities, and level of sophistication.

**D. <u>Defendants' Infringing Activity</u>**

39. On or about March 29, 2026, without permission or authorization from Plaintiff, Defendants published on the Website a National Desk story, now titled "Fighter jets intercept civilian plane above Palm Beach, amid rumors," at URL: https://cbsaustin.com/news/nation-world/drone-sighting-near-air-force-one-triggers-temporary-pbi-ground-stop-delta-pilot-says-pbi-palm-beach-international-airport-air-force-one-drone-scare-ground-stop-delta-air-lines-security-breach-restricted-airspace-scrambled-helicopters-president (the "*Infringement*"), and



SLG SANDERS · LAW GROUP ·

embedded the Video in that story so that the Video is displayed and plays within the Website's page. A copy of a screengrab depicting the Infringement is attached hereto as Exhibit 2.

40. Upon information and belief, Defendants published the same National Desk story, with the Video embedded, on thenationaldesk.com and on numerous other station websites owned or operated by Defendants, including okcfox.com, wset.com, and cnycentral.com, to an extent to be determined in discovery.

41. The Infringement does not merely link to the Video. Defendants deliberately selected the Video and placed it within their own story, where it is displayed to every visitor to the page without the visitor leaving the Website. By doing so, Defendants publicly displayed the Video within the meaning of 17 U.S.C. §§ 101 and 106(5). See Nicklen v. Sinclair Broadcast Group, Inc., 551 F. Supp. 3d 188 (S.D.N.Y. 2021).

42. Fedun's posting of the Video on X did not license Defendants, a commercial broadcaster, to exploit the Video in their own news product, and Plaintiff has not authorized Defendants to use the Video.

43. Plaintiff first observed the Infringement on March 29, 2026.

44. Upon information and belief, Defendants take an active and pervasive role in the content posted on the Website, including, but not limited to, copying, posting, selecting, editing, and displaying content, including Plaintiff's work.

45. Upon information and belief, Defendants published the Infringement through their employee Grace Bellinghausen, whom Defendants identify as a journalist for The National Desk and as the author of the story, acting within the scope of her employment.

46. Upon information and belief, Defendants had complete control over and actively reviewed and monitored the content posted on the Website, had the legal right and ability to control and limit the infringing activities on the Website, and at all times had the ability to stop the reproduction and display of Plaintiff's copyrighted material.

47. Upon information and belief, Defendants are not entitled to the limitations on liability set forth in 17 U.S.C. §512 because the infringing content was selected, uploaded,



SLG SANDERS · LAW GROUP ·

approved, and published by Defendants and their employees acting within the scope of their employment, and not at the direction of a "user" within the meaning of 17 U.S.C. §512(c).

48. Upon information and belief, Defendants have received a financial benefit directly attributable to the Infringement, in that the Infringement attracted visitors to the Website and Defendants' other station websites and, in turn, caused Defendants to realize an increase in their advertising and business revenues.

49. Defendants' use of the Video usurped the market for licensed uses of the Video, which Plaintiff licenses to news organizations for a fee, and Defendants' use, if widespread, would harm Plaintiff's potential market for the Video.

**E. <u>Defendants Continued to Infringe After Notice</u>**

50. On or about August 7, 2026, Plaintiff, through counsel, notified Defendants of the infringing activity described herein and demanded that Defendants cease and desist from their unauthorized use of Plaintiff's copyrighted work and compensate Plaintiff for that use.

SLG SANDERS · LAW GROUP ·

51. Thereafter, on or about September 7, 2026, Plaintiff, through counsel, sent a follow-up communication seeking to resolve the dispute without litigation and affording Defendants an additional opportunity to address Plaintiff's claims.

52. Despite receiving notice of Plaintiff's claims and being afforded multiple opportunities to resolve the matter amicably, Defendants failed and/or refused to adequately address Plaintiff's claims, thereby necessitating the commencement of this action.

53. Notwithstanding Plaintiff's letters, Defendants have not removed the Infringement. As of October 14, 2026, the Infringement remained publicly displayed on the Website. A screengrab of the Infringement captured on that date is attached hereto as Exhibit 3.

**F. <u>Defendants' Infringement Was Willful</u>**

54. Defendants' infringement was willful. An enterprise that creates, licenses, and polices photographs, video, and other content as its core business; that requires the world to obtain written permission before reproducing its own content; that maintains a corporate department to process copyright complaints; that trains its personnel on when material must be

licensed; and that has previously been sued for the unlicensed use of a third party's work, cannot credibly claim it did not know that copying and republishing a professional's work without a license was infringement.

55. Defendants' sophistication as content creators and licensors, combined with their decision to build a national news story around an eyewitness's video within hours of its publication, their distribution of that story across their station websites, their failure to seek a license, and their continued display of the Video after notice, demonstrates that Defendants knew their conduct was infringing or, at a minimum, acted in reckless disregard of Plaintiff's rights.

56. Upon information and belief, Defendants were aware of facts or circumstances from which the determination regarding the infringement was apparent. Defendants cannot claim that they were not aware of the infringing activities which form the basis of this Complaint, since such a claim would amount to only willful blindness on the part of Defendants.

57. As a result of Defendants' misconduct, Plaintiff has been substantially harmed.

**FIRST CAUSE OF ACTION**

***(Direct Copyright Infringement, 17 U.S.C. §501 et seq., Against All Defendants)***

58. Plaintiff repeats and incorporates by reference the allegations contained in the preceding paragraphs, as though set forth in full herein.

59. The Video is an original, creative work in which Plaintiff owns a valid copyright.

60. The Video is properly registered with the USCO and Plaintiff has complied with all statutory formalities under the Copyright Act and under regulations published by the USCO.

61. Plaintiff has not granted any Defendant a license or the right to use the Video in any manner, nor has Plaintiff assigned any of its exclusive rights in the copyright to any Defendant.

62. Without permission or authorization from Plaintiff and in willful violation of Plaintiff's rights under 17 U.S.C. §106, Defendants improperly and illegally copied, reproduced, distributed, and/or publicly displayed the Video, thereby violating Plaintiff's exclusive rights in its copyright.



SLG SANDERS LAW GROUP

63. Each Defendant engaged in volitional conduct causing the infringement, directly or through employees and agents acting within the scope of their employment or agency, and Defendants are jointly and severally liable for the infringement.

64. As a result of Defendants' violations of Title 17 of the U.S. Code, Plaintiff is entitled to an award of actual damages and disgorgement of all of Defendants' profits attributable to the infringement as provided by 17 U.S.C. § 504(b) in an amount to be proven or, in the alternative, at Plaintiff's election, an award for statutory damages pursuant to 17 U.S.C. § 504(c), enhanced to up to $150,000 for willful infringement pursuant to 17 U.S.C. § 504(c)(2).

65. As a result of Defendants' violations of Title 17 of the U.S. Code, the Court in its discretion may allow the recovery of full costs as well as reasonable attorney's fees pursuant to 17 U.S.C. § 505 from Defendants.

66. As a result of Defendants' violations of Title 17 of the U.S. Code, Plaintiff is entitled to injunctive relief to prevent or restrain infringement of Plaintiff's copyright pursuant to 17 U.S.C. § 502.

SLG SANDERS · LAW GROUP ·

## SECOND CAUSE OF ACTION

***(Vicarious Copyright Infringement, Against Sinclair, SBG, and STG, in the Alternative)***

67. Plaintiff repeats and incorporates by reference the allegations contained in the preceding paragraphs, as though set forth in full herein.

68. This Count is pleaded in the alternative to the First Count pursuant to Fed. R. Civ. P. 8(d)(2), to the extent any of Sinclair, SBG, or STG is found not to have directly infringed. To the extent the infringement was committed by KEYE Licensee or by any other subsidiary, employee, or agent of Defendants, Sinclair, SBG, and STG are vicariously liable for it.

69. Sinclair, SBG, and STG each had the right and ability to supervise and control the infringing activity. Among other things, they own and control the entities and stations through which the Video was published; govern Defendants' websites and linked social media accounts through common terms and conditions; operate the centralized systems through which content is produced, ingested, and redistributed across Defendants' platforms; maintain the corporate

department that processes copyright complaints; and train personnel on copyright practices, including when material must be licensed.

70. Sinclair, SBG, and STG each had a direct financial interest in the infringing activity, in that the infringement attracted viewers to Defendants' platforms, and the resulting audience and advertising revenue flow to them.

71. Sinclair, SBG, and STG failed to exercise their right and ability to stop the infringement, including after receiving Plaintiff's counsel's letters.

72. As a result, Plaintiff is entitled to the relief set forth in the First Count against Sinclair, SBG, and STG, jointly and severally.

## THIRD CAUSE OF ACTION

***(Contributory Copyright Infringement, Against Sinclair, SBG, and STG, in the Alternative)***

73. Plaintiff repeats and incorporates by reference the allegations contained in the preceding paragraphs, as though set forth in full herein.

74. This Count is pleaded in the alternative to the First and Second Counts pursuant to Fed. R. Civ. P. 8(d)(2).

75. Sinclair, SBG, and STG knew or had reason to know of the infringement, including by virtue of their supervision of Defendants' news and digital operations and, at the latest, upon receipt of Plaintiff's counsel's letters.

76. Sinclair, SBG, and STG materially contributed to the infringement by providing the personnel, systems, and digital distribution channels through which the Video was copied and published, and by continuing to provide them after receiving notice of the infringement.

77. As a result, Plaintiff is entitled to the relief set forth in the First Count against Sinclair, SBG, and STG, jointly and severally.

## JURY DEMAND

78. Plaintiff hereby demands a trial of this action by jury.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that the Court enter a judgment finding

SLG SANDERS · LAW GROUP ·

that Defendants have infringed Plaintiff's rights in the Video in violation of 17 U.S.C. §501 *et seq.* and therefore award damages and other relief as follows:

a. finding that Defendants infringed Plaintiff's copyright interest in and to the Video by copying, reproducing, distributing, publishing, and publicly displaying it without a license or consent, and that such infringement was willful;

b. for an award, jointly and severally against Defendants, of actual damages and disgorgement of all of Defendants' profits attributable to the infringement as provided by 17 U.S.C. § 504(b) in an amount to be proven or, in the alternative, at Plaintiff's election, an award of statutory damages pursuant to 17 U.S.C. § 504(c), including enhanced statutory damages for willful infringement pursuant to 17 U.S.C. § 504(c)(2);

c. for an order pursuant to 17 U.S.C. § 502(a) enjoining Defendants from any infringing use of any of Plaintiff's works and directing Defendants to remove the infringing content from any website or platform within their control;

d. for costs of litigation and reasonable attorney's fees against Defendants pursuant to 17 U.S.C. § 505;

e. for pre-judgment and post-judgment interest as permitted by law; and

f. for any other relief the Court deems just and proper.

DATED: October 26, 2026

**SANDERS LAW GROUP**

By: ___/s/ Craig Sanders___________
Craig Sanders, Esq.
333 Earle Ovington Blvd, Suite 402
Uniondale, NY 11553
Tel: (516) 203-7600
Email: csanders@sanderslaw.group
File No.: 145074

*Attorneys for Plaintiff*

SLG SANDERS · LAW GROUP ·